# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-CA-01488-SCT

*BIEL REO, LLC*

*v.*

*LEE FREYER KENNEDY CRESTVIEW, LLC AND*
*LEE FREYER KENNEDY*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/11/2016 |
| TRIAL JUDGE: | HON. LISA P. DODSON |
| TRIAL COURT ATTORNEYS: | RICHARD D. MITCHELL |
| | RICK ANDREW La TRACE |
| | JEFFREY LOEWER HALL |
| | JEFFREY MONROE WILLIAMS |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | RICK ANDREW La TRACE |
| ATTORNEYS FOR APPELLEES: | JEFFREY MONROE WILLIAMS |
| | RICHARD D. MITCHELL |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | ON DIRECT APPEAL: REVERSED AND REMANDED.  ON CROSS-APPEAL: AFFIRMED - 03/01/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., KING AND BEAM, JJ.**

**KING, JUSTICE, FOR THE COURT:**

¶1.     In this case involving two default commercial notes, Biel REO, LLC ("Biel REO"),

filed a breach of contract and guaranty action in the Harrison County Circuit Court. Note 1

was secured by property in Okaloosa County, Florida. While the Mississippi case remained

pending, Biel REO foreclosed on the collateral property located in Florida and obtained a

deficiency judgment against Lee Freyer Kennedy Crestview, LLC ("LFK Crestview"), in the

Okaloosa County Circuit Court. Biel REO now appeals the Harrison County Circuit Court's finding that because Biel REO had obtained a judgment pursuant to Note 1 in Florida solely against LFK Crestview and because Biel REO's pleadings requested relief based on Note 1 itself, Note 1 no longer existed. Thus, the Continuing Guaranty signed by Lee Freyer Kennedy ("Kennedy") individually had nothing left to guarantee as to Note 1.[1] Therefore, Kennedy was not personally liable on any obligations relating to Note 1.

¶2.     The Kennedy Defendants cross-appeal the trial court's finding that LFK Crestview was liable under Note 2 and that the Guaranty Agreement unambiguously encompassed Note 2. The Kennedy Defendants also appeal the trial court's decision to award Biel REO attorneys' fees and pre- and post-judgment interest in the amount of Note 2's stated default rate of eighteen percent.

## FACTS AND PROCEDURAL HISTORY

¶3.     On March 14, 2007,  LFK Crestview executed and delivered a Commercial Note ("Note 1"), numbered 4449, with Whitney National Bank ("Whitney Bank"), in which it agreed to pay the principal amount of $4,100,000, plus interest.[2] Note 1 was secured by approximately 287 acres of real estate property in Okaloosa County, Florida. Upon default, LFK Crestview  agreed to pay reasonable attorneys' fees and costs of collection incurred by

---

[1]LFK Crestview and Kennedy are referred to as the "Kennedy Defendants" when appropriate.

[2]Note 1 was modified on March 5, 2008; June 3, 2008; June 8, 2009; and on September 1, 2009.

2

the holder of the note. The terms provided for a four-percent interest rate if any payment on the note was sixteen or more days late. Upon default, the interest rate increased to eighteen percent.

¶4.     On the same day, Kennedy executed and delivered to Whitney Bank a Guaranty Agreement entitled "Continuing Guaranty," also numbered 4449, in which Kennedy promised to repay all of the outstanding indebtedness of LFK Crestview, whether then existing or thereafter incurred, together with reasonable attorneys' fees and costs incurred in attempting to collect said indebtedness. The Guaranty Agreement stated:

> Guarantor jointly, severally, and unconditionally guarantees to Bank the prompt payment in full of all obligations and liabilities of Borrower to Bank, direct or contingent, due or to become due, now existing or hereafter arising, including, without limitation, all future advances, with interest, attorneys' fees, expenses of collection and costs, and further including, without limitation, obligations to Bank on promissory notes, checks, overdrafts, letter-of-credit agreements, loan agreements, security documents, endorsements and continuing guaranties (collectively, the "Obligations"). . . .

¶5.     On November 27, 2007, LFK Crestview executed and delivered a Promissory Note ("Note 2"), numbered 5726, with Whitney Bank, in which it agreed to pay the principal amount of $500,000, plus interest.[3] Upon default, LFK Crestview agreed to pay reasonable attorneys' fees and costs of collection incurred by the holder of Note 2.[4] Again, the terms

---

[3]Note 2 was modified on November 27, 2008, and November 27, 2009.

[4]In addition, although not the subjects of the instant action, on February 25, 2008, Lee F. Kennedy Alabama, LLC ("LFK Alabama"), executed a Promissory Note to Whitney Bank in the amount of $1,763,000. Kennedy executed a Guaranty Agreement the same day. And on August 4, 2008, Factory Hill, LLC, executed a Promissory Note to Whitney Bank in the amount of $2,021,250. Kennedy executed a Guaranty Agreement on that same day.

3

provided for a four-percent interest rate if any payment on the note was sixteen or more days late and, upon default, the interest rate increased to eighteen percent. Note 2 was unsecured.

¶6. On January 24, 2011, Whitney Bank assigned Note 1, Note 2, and the Continuing Guaranty to Biel Loan Co. III-A, LLC ("Biel Loan Co.").

¶7. On June 2, 2011, in the Circuit Court of Harrison County, Mississippi, Biel Loan Co. filed suit against LFK Crestview, LFK Alabama, Factory Hill, and Kennedy.[5] Biel Loan Co. alleged that Note 1 had matured and that LFK Crestview was in default under the terms of Note 1 for failure to make payments. Biel Loan Co. alleged that, as of March 8, 2010, LFK Crestview owed a principal balance of $3,800,000, accrued interest in the amount of $27,866.67, late charges of $200, and reasonable (15%) attorneys' fees totaling $574,210, with interest accruing at the *per diem* rate of $1,873.97. The total amount owed as of March 8, 2010, was $4,402,276.67.

¶8. Additionally, Biel Loan Co. alleged that LFK Crestview was in default under the terms of Note 2. As of March 8, 2010, LFK Crestview owed $276,868.56, consisting of a principal balance of $239,731.94, accrued interest of $984.85, late charges of $38.48, and reasonable (15%) attorneys' fees in the amount of $36,113.29, with interest accruing at the *per diem* rate of $111.80. In total, Biel Loan Co. in its First Cause of Action alleged that, as

---

[5]A separate entity purchased the LFK Alabama and Factory Hill notes and those claims were dropped from the lawsuit.

of March 8, 2010, LFK Crestview was indebted pursuant to Note 1 and Note 2 in the total amount of $4,679,145.23, with a collective *per diem* rate of $1,985.77.

¶9. Biel Loan Co.'s Fourth Cause of Action alleged that, pursuant to the Continuing Guaranty, Kennedy was individually liable for those amounts. The defendants answered, each entity admitting the execution of the notes and/or guaranty agreements but denying all other allegations.

¶10. Thereafter, Biel Loan Co. moved the trial court to substitute as a party Biel REO and attached alloneges as exhibits in support. Additionally, an Assignment and Assumption of Mortgage, Assignment of Leases and Rents and Loan Documents ("Assignment") was attached. This Assignment stated that on January 19, 2011, Tandy Loanco, LLC, a Delaware limited liability company, as Trustee for Biel Loanco Grantor Trust I, assigned and transferred to Biel REO the Real Estate Mortgage and Security Agreement dated March 14, 2007. The trial court granted the unopposed motion and substituted Biel REO as plaintiff.

¶11. Biel REO then moved the court to dismiss the causes of action in the complaint against LFK Alabama and Factory Hill and the causes of action against Kennedy that pertained to either LFK Alabama or Factory Hill. The trial court granted the motion, leaving as defendants only LFK Crestview and Kennedy.

¶12. While the Harrison County action was pending, Biel REO filed a judicial foreclosure action against LFK Crestview in the Circuit Court of Okaloosa County, Florida. Kennedy individually was not named as a party to the action. The Florida court then entered a Final

Summary Judgment in the judicial foreclosure action, finding LFK Crestview liable to Biel REO for the amount of $5,980,469.46, with interest accruing at the rate of 4.75% per annum.

¶13.    On May 10, 2013, the Clerk of Court held a judicial foreclosure sale of the mortgaged property, approximately 264.94 acres in Crestview, Florida. In an auction open for approximately two minutes, Biel REO purchased the property for $100. Subsequently, Biel REO filed a motion seeking a deficiency judgment in the Florida court. Biel REO's expert concluded that the best use of the property was as future residential development and valued the foreclosed property at $2,300.87 per acre, for a total value of $610,000. In contrast, LFK Crestview's expert valued the property "as is with [Planned Unit Development (PUD)] zoning in place" to be $10,700,000. LFK Crestview's expert additionally opined that the property "as-is with PUD zoning and with [Community Development Districts (CDDs) in place" had a potential value of $16,900,000. The property "as-is with PUD zoning, CDD bond is funded and Development Order is in place" was valued at $17,900,000.

¶14.    On October 2, 2014, in Mississippi, the circuit clerk filed a Motion to Dismiss for Want of Prosecution. Biel REO responded, asserting that a related judicial foreclosure action was pending in the Circuit Court of Okaloosa County, Florida.[6]

¶15.    On December 1, 2014, the trial court in Mississippi issued an order that required the parties to provide the court with a proposed Scheduling Order within forty-five days. The parties had a telephonic hearing with the trial court, after which the court entered a second

---

[6]Biel REO commenced the Florida action on July 26, 2012.

order finding that a Scheduling Order was necessary in order to expedite and conclude the matter. The trial court set trial for November 30, 2015.

¶16. On July 17, 2015, the trial court in the Florida litigation entered a Final Deficiency Judgment against LFK Crestview in the amount of $5,965,485.24. The Florida court found the property value to be $610,000. It then entered a final judgment against Crestview in the amount of $5,965,485.24.[7]

¶17. In Mississippi, Biel REO requested a continuance of the trial setting, stating that the trial court in the Florida litigation had entered a Final Deficiency Judgment against LFK Crestview in the amount of $5,965,485.24, and that Biel REO's Motion to Tax Attorneys' Fees and Costs remained pending in the Florida court. Biel REO argued that once it obtained a final judgment in the Florida litigation, the Harrison County case would be ripe for summary judgment. It also attached the post-foreclosure deficiency judgment in the Florida litigation.

¶18. The Kennedy Defendants argued that Biel REO's motion should be denied, because Kennedy was not a party in the Florida action and Biel REO was attempting either to deprive Kennedy of her right to a bench trial or to delay the Mississippi trial to avoid potentially inconsistent rulings as to whether Biel REO was entitled to a deficiency judgment. The Kennedy Defendants argued in the alternative that Biel REO endeavored to delay the trial

---

[7]The final judgment was equal to the difference between $5,980,469.46, the amount stated in the Final Summary Judgment, and $610,000, the fair market value of the foreclosed property, plus accrued interest of $595,015.78, and reasonable attorneys' fees and costs.

so that it could argue *res judicata* before the Mississippi court. Biel REO argued instead that: "A continuance of the trial setting . . . serves the following important interests: the efficient use of judicial resources, preservation of the integrity of prior judgments and facilitation of the parties' reliance thereon, fostering respect for the rendering court, avoidance of inconvenience and harassment of the litigants and piecemeal litigation." It argued that, pursuant to Mississippi Code Section 11-7-303, a foreign judgment had the same effect as a judgment of a Mississippi circuit court and may be enforced the same as a domestic judgment.[8]

¶19.    The trial court denied Biel REO's motion to amend the scheduling order, finding that "any amending of deadlines would be prejudicial and would delay the Trial in this cause."

¶20.    Trial began on April 19, 2016, and concluded on April 20. The parties did not dispute that Note 1, Note 2, and the Guaranty Agreement were executed and that both Notes 1 and

---

[8]Mississippi Code Section 11-7-303 states:

> A copy of any foreign judgment authenticated in accordance with the act of Congress or the statutes of this state or any rule promulgated and adopted by the Mississippi Supreme Court may be filed in the office of the clerk of the circuit court of any county in this state. Said clerk shall treat the foreign judgment in the same manner as a judgment of the circuit court of any county in this state. A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating or staying as a judgment of a circuit court of any county in this state and may be enforced or satisfied in like manner . . . .

Miss. Code Ann. § 11-7-303 (Rev. 2004).

2 were in default.[9] At trial Biel REO asserted that, because a final judgment had been entered in Florida, Note 1 no longer existed. Under Florida law, the note had merged into the final judgment. Therefore, it entered into evidence the Florida judgments and requested that the trial court consider the documents as evidence of Kennedy's obligation pursuant to the Continuing Guaranty.

¶21.  After a bench trial, the trial court issued a judgment, stating:

> as to Crestview, Biel already had a judgment related to the amounts claimed due under Note 1. It is not entitled to a second judgment on the same note for the same amounts. Biel has a judgment which it has previously indicated that it would "domesticate." It certainly has every right to enroll the Florida judgment in Mississippi should it choose to do so. It has not done so in this cause or otherwise.

The trial court then expressed concern over why Kennedy had not been named as a party in the Florida litigation and held that the Florida judgment did not appear to be binding on Kennedy individually. It found that by Florida law, Note 1 was cancelled at the time that the foreclosure was allowed in Florida and that it no longer existed. It stated:

> Had Biel proceeded with this cause first and obtained its judgment and then proceeded with the Florida foreclosure, the result would be different. However, it chose to proceed in Florida first and obtain its judgment there. Nor did Biel ever seek to amend its Complaint in this cause to proceed as to the Florida judgment rather than as to Note 1. There were no claims for recovery made based on the Florida judgment. Biel merely submitted the Florida documents as exhibits and made arguments about them, but never sought to amend to either change its claims or add claims. Biel cannot now proceed on Note 1 as Note 1 no longer exists. Nor can it proceed a second time against

---

[9]LFK Crestview received the full amount pursuant to Note 1 but did not receive the full amount of Note 2. The parties agreed to the actual amount received pursuant to Note 2.

Crestview on the same claim. Further, as Note 1 no longer exists as a viable note, the Guaranty as related to Note 1 has nothing left to guarantee. The claims for recovery under Note 1 and for recovery under the Guaranty as it relates to Note 1 must be dismissed.

As to Note 2, the trial court found that Biel REO clearly was entitled to a judgment against LFK Crestview in the principal amount of $226,699.90, plus accrued interest through April 19, 2016, in the amount of $243,931.72, and late fees of $2,021.52, for a total of $472,653.14. In addition, the trial court found the Guaranty Agreement applied to Note 2 and that Kennedy was liable individually for the amounts due.

¶22. Biel REO filed a motion for attorneys' fees. The Kennedy Defendants objected, arguing first that they were not liable for attorneys' fees that Biel Loan Co. had incurred. Second, they argued that all attorneys' fees associated with Biel REO were unnecessary and solely related to Biel REO's failure to move the case forward. And, in the alternative, the Kennedy Defendants argued that the amount sought was excessive in relation to the work performed, the hourly rate charged by the attorneys and paralegals who worked on the case was excessive, and that Biel REO may not recover attorneys' fees incurred from the Florida deficiency suit.

¶23. The trial court held that the Kennedy Defendants were not liable for attorneys' fees related to the Florida litigation, but were liable for attorneys' fees in the Mississippi litigation. It approved Biel REO's request for prejudgment and postjudgment interest at the rate of eighteen percent.

**ISSUES ON APPEAL**

10

I.      Whether the trial court erred in its finding that the Florida judgments were not sufficient evidence of Kennedy's financial obligation under the Guaranty Agreement.

II.     In the alternative, whether Biel REO was required to amend its pleadings to include the Florida judgments to recover on the Guaranty Agreement.

## ISSUES ON CROSS-APPEAL

III.    Whether Note 2 was assigned properly to Biel REO.

IV.     Whether the trial court erred in holding Lee Kennedy personally liable under Note 2.

V.      Whether the trial court abused its discretion in awarding Biel REO eighteen percent pre- and post-judgment interest.

VI.     Whether the trial court erred in its decision to award attorneys' fees.

## ANALYSIS

**I.      Whether the trial court erred in its finding that the Florida judgments were not sufficient evidence of Kennedy's financial obligation under the Guaranty Agreement.[10]**

¶24.    The trial court dismissed Biel REO's cause of action pertaining to Note 1 after finding that Note 1 had been canceled and no longer existed because of the Florida actions. The standard of review for involuntary dismissals is as follows:

> In considering a motion to dismiss, the judge should consider "the evidence fairly, as distinguished from in the light most favorable to the plaintiff," and the judge should dismiss the case if it would find for the defendant. "The court must deny a motion to dismiss only if the judge would be obliged to find for the plaintiff if the plaintiff's evidence were all the evidence offered in the

---

[10]Issues I and II are combined.

case." "This Court applies the substantial evidence/manifest error standards to an appeal of a grant or denial of a motion to dismiss pursuant to M.R.C.P. 41(b)."

***Stewart v. Merchants Nat'l Bank***, 700 So. 2d 255, 259 (Miss. 1997) (internal citations omitted).

¶25. Biel REO argues that the trial court erred in finding that Kennedy was not liable under the Continuing Guaranty for the amount owed pursuant to the Florida judgments and states that its complaint sufficiently put Kennedy on notice that Biel REO was attempting to collect against her the total indebtedness owed by LFK Crestview to Biel REO, regardless of form. Biel REO contends that the trial court was under the misimpression that Biel REO was attempting to proceed directly upon the Florida judgments against LFK Crestview and Kennedy.

¶26. In its Complaint, Biel REO alleged as its first cause of action that LFK Crestview was indebted to Biel REO pursuant to the terms of both Note 1 and Note 2. In its fourth cause of action, Biel REO alleged that Kennedy was indebted to Biel REO under the terms of the LFK Crestview Guaranty Agreement and attached the Guaranty Agreement as an exhibit. Biel REO states that, pursuant to its fourth cause of action, it was unnecessary for Biel REO to amend its Complaint to bring a new cause of action on the Florida judgments. These Florida judgments established the indebtedness owed by LFK Crestview to Biel REO, for which Kennedy was liable under the terms of the Continuing Guaranty.

¶27. As to the Florida judgment, this Court previously has explained that:

12

the rule that a judgment merges the cause of action on the note in the judgment applies generally to judgments on negotiable instruments, but this is primarily to bar subsequent actions on the instrument itself. 8 Am. Jur., Bills and Notes, Sec. 798. The doctrine of merger is designed to promote justice and applies no further than that end requires. It is based on the theory that a superior right, the judgment, covers an inferior right, the note. Principally it precludes the relitigation of a cause of action, by the doctrine of res judicata. 30A Am. Jur., Judgments, Secs. 313-315. Upon the merger, the judgment becomes evidence of the debt in the sense that a proceeding in reference to it should be filed on the judgment; but it does not mean an annihilation and discharge of the debt so as to preclude an examination of its character or nature for all purposes.

*Fish Meal Co. v. Brondum*, 135 So. 2d 825, 830 (1961). Therefore, as the trial court stated, Note 1 merged into the Florida judgments and no longer existed.

¶28.    However, the Florida judgments did represent a liability of LFK Crestview to Biel REO. Pursuant to the Continuing Guaranty, Kennedy unconditionally guaranteed to Biel REO "prompt payment in full of *all obligations and liabilities of Borrower to [Biel REO], direct or contingent, due or to become due, now existing or hereafter arising*. . . ." The agreement stated: "this Continuing Guaranty . . . for the purpose of guarantying the obligations of Lee Freyer Kennedy Crestview, LLC . . . . Guarantor jointly, severally and unconditionally guarantees to Bank the prompt payment in full of all obligations and liabilities of Borrower to Bank. . . ." Additionally, Kennedy waived all rights to "notice and pleas of presentment, demands, dishonor, and protest."

¶29.    Pursuant to Mississippi Rule of Civil Procedure 8, sufficient notice of the claims and grounds for relief satisfies the liberal pleading requirements. This Court recently has reiterated that:

13

> To satisfy the liberal pleading requirements of Rule 8 of the Mississippi Rules of Civil Procedure, "the pleadings need only 'provide sufficient notice to the defendant of the claims and grounds'" upon which relief is sought, based on direct or inferential fact allegations. Rather than a "magic words requirement," Rule 8's objective is "to avoid civil cases turning on technicalities" while "giving the opposing party fair notice of the nature and basis or grounds of the pleader's claim."

*City of Vicksburg v. Williams*, 191 So. 3d 1242, 1245 (Miss. 2016) (internal quotations and citations omitted). Biel REO stated in its complaint that it was seeking recovery under the terms of the Continuing Guaranty, not solely pertaining to Note 1 but to all indebtedness of Kennedy pursuant to the guaranty. Therefore, this put Kennedy on notice that it was attempting to recover pursuant to the Continuing Guaranty, in which Kennedy agreed to prompt payment of all liabilities and obligations of LFK Crestview to Biel REO. It then submitted as evidence at trial the Florida judgment, which constituted an obligation of LFK Crestview to Biel REO.

¶30. The trial court found the fact that Kennedy had not been a defendant in the Florida deficiency action to be concerning. Biel REO stated that Kennedy had not been made a party because the Florida court had lacked personal jurisdiction over Kennedy. While this normally might cause concern, the Guaranty Agreement unambiguously states: "Guarantor shall be bound by all of the terms and conditions of any notes, agreements, or other obligations in favor of Bank signed or incurred by Borrower. Guarantor hereby waives all notice and pleas of presentment, demand, dishonor and protest." Therefore, Kennedy waived all rights to notice and pleas of protest when she signed the Continuing Guaranty.

14

¶31. The Kennedy Defendants next argue that under Mississippi law, Biel REO's bid of $100 to purchase the Florida property would have precluded Biel REO's ability to obtain a deficiency judgment. According to Mississippi law, when a creditor conducts a foreclosure sale of a debtor's property:

> if the secured creditor is authorized to foreclose by power of sale, after the debtor's default and upon compliance with the deed of trust or other instrument, the secured creditor may sell any or all of the real estate that is subject to the security interest in its then condition or after any reasonable rehabilitation or preparation for sale. Every aspect of the sale, including the method, advertising, time, place and terms, must be commercially reasonable. This is an objective standard.

*Hartman v. McInnis*, 996 So. 2d 704, 710 (Miss. 2007) (quoting *Wansley v. First Nat'l Bank*, 566 So. 2d 1218, 1223 (Miss.1990)). A "creditor has no right to a deficiency judgment until he satisfies the court that it would be equitable, in the light of the sale price, to authorize a deficiency judgment." *Hartman*, 996 So. 2d at 710.

¶32. The Kennedy Defendants state that Biel REO's purchase of approximately 265 acres for $100 shocks the conscience and argue that the Florida property was worth at least $3,000,000.[11] However, the Florida court did not find that $100 was the fair market price of

---

[11]On July 16, 2012, Hyperion Capital Partners ("Hyperion") paid a nonrefundable fee of $100,000 to have the option to purchase the Florida property for $1,900,000. Hyperion did not exercise the option. On February 12, 2013, Hyperion then submitted a second offer to Biel REO to purchase the Florida property for $1,300,000. Brian Doherty, vice-president of Capital Crossing, authorized servicer for Biel Loan Co. Grantor Trust, rejected Hyperion's offer, stating that the two were far apart in their opinions of value. Additionally, the Kennedy Defendants presented evidence that the Biel REO bidding agent had been authorized to bid up to $3,000,000, in the foreclosure action in Florida.

the Florida property. The Florida court held a trial in which Biel REO and LFK Crestview each presented evidence, including evidence of the Hyperion offers, of what the respective companies considered to be the fair market value of the property. After a full trial, the Florida court then found that $610,000 was the fair market value of the property. Because Kennedy waived notice to any other obligations in favor of the holder of the Guaranty Agreement, the Florida judgments were sufficient evidence of her indebtedness to Biel REO. Additionally, this Court previously has stated, "unlike suits where the lender sues the primary borrower, an individual guaranty (as written in the contracts applicable here) does not require foreclosure or fairness of price. The guarantor is immediately liable upon the borrower's (in this case, Indian Head's) default." *Bosarge v. LWC MS Props., LLC*, 158 So. 3d 1137, 1143 n.5 (Miss. 2015).

¶33.    The Kennedy Defendants lastly argue that because Mississippi follows the "first to file" rule, Mississippi had priority jurisdiction over Florida. "This Court 'repeatedly' has stated that it is a 'well established rule in this jurisdiction that where two (2) suits between the same parties over the same controversy are brought in courts of concurrent jurisdiction, the court which first acquires jurisdiction retains jurisdiction over the whole controversy to the exclusion or abatement of the second suit.'" *Braswell v. Ergon Oil Purchasing, Inc.*, 179 So. 3d 997, 1002–03 (Miss. 2015), *reh'g denied* (Dec. 17, 2015) (quoting *Copiah Med. Assocs. v. Mississippi Baptist Health Sys.*, 898 So. 2d 656, 663 (Miss. 2005)). Yet the appropriate time to assert this defense would have been in the Florida action, before a final

16

judgment had been obtained. LFK Crestview fully participated in the Florida lawsuit. No evidence exists that it complained of a prior lawsuit in the Florida action.

¶34.	Therefore, because Biel REO's Fourth Cause of Action in its Complaint put Kennedy on notice that it was pursuing reimbursement according to the terms of the Continuing Guaranty that she personally signed, we find that the trial court erred in its determination that Biel REO was required to amend its pleadings to include the Florida judgments in order to recover against Kennedy individually.

## CROSS-APPEAL

### II.	Whether Note 2 was assigned effectively to Biel REO.

¶35.	LFK Crestview argues that Capital Crossing, the Biel REO servicing agent, lacked authority to execute the assignment of Note 2 and the Guaranty Agreement. On January 24, 2011, Whitney Bank assigned Note 1, Note 2, and the Guaranty Agreement to Biel Loan Co. Biel Loan Co. then assigned the notes and guaranty to Biel Loan Co. Grantor Trust, for which Capital Crossing also was the authorized servicer. On March 6, 2012, Biel Loan Co. Grantor Trust assigned the documents to Biel REO. Brian Doherty, vice-president of Capital Crossing, testified that he had been present when the assignment was completed and that the assignment had transferred all documents related to LFK Crestview from Biel Loan Co. Grantor Trust to Biel REO.

17

¶36.    On June 6, 2012, Biel Loan Co. filed an Amended Motion to Substitute Party, asking the court to substitute Biel REO as a party in the lawsuit. The Kennedy Defendants agreed to the substitution, and the trial court granted the motion.

¶37.    However, at trial, a Limited Power of Attorney signed on April 13, 2016, was introduced, stating that it was effective as of March 9, 2012, three days after Biel Loan Co. Grantor Trust had assigned the loans and guaranty to Biel REO. The power of attorney stated that Biel REO had appointed Capital Crossing as its attorney-in-fact with respect to the LFK Crestview loans and guaranty. The Kennedy Defendants contend that the Power of Attorney was backdated three days after the loans and guaranty had been transferred, therefore Capital Crossing had possessed no authority to assign the loans.

¶38.    Doherty testified that the document had been executed as standard practice in advance of trial prior to giving testimony, just in case any question arose about Doherty's ability to testify on behalf of Biel REO.[12] When asked if Doherty had brought anything to show that Capital Crossing had authority to assign the documents to Biel REO, Doherty stated that he had not.

¶39.    The trial court found that the question of assignment had never been presented to the court. "It is a long-established rule in this state that a question not raised in the trial court will not be considered on appeal." *Adams v. Bd. of Supervisors of Union Cty.*, 177 Miss. 403,

---

[12]Doherty later testified that he did not acquire a power of attorney to testify in every instance, only from time to time.

170 So. 684, 685 (1936) (citations omitted). The trial court addressed the issue regardless and found that no evidence of the lack of authority had been provided to the court.

¶40. At trial, counsel for the Kennedy Defendants cross-examined Doherty regarding the legality of various assignments from Whitney Bank to Biel REO. The Kennedy Defendants additionally raised the issue in their motion to reconsider. Thus, we find that the Kennedy Defendants preserved the issue of the legality of the assignments of the notes and the guaranty to Biel REO. However, because the Kennedy Defendants previously agreed to the substitution of Biel REO as the plaintiff and real party in interest, the appropriate time to object to the substitution would have been at that time. Additionally, the Kennedy Defendants failed to submit testimony or evidence in support of their argument that the documents had not been assigned properly to Biel REO. Accordingly, this issue has no merit.

**III. Whether the trial court erred in holding Kennedy personally liable under Note 2.**

¶41. The Kennedy Defendants assert that Kennedy solely guaranteed Note 1 and that the Guaranty Agreement did not apply to Note 2. In support, the Kennedy Defendants point out that Note 1 and the Guaranty Agreement both were assigned the number 4449, while Note 2 had been assigned the number 5726. Kennedy also testified that she had not signed a personal guaranty for Note 2 and that the guaranty had covered only Note 1. So the Kennedy Defendants argue that the differing numbers combined with Kennedy's testimony that she solely guaranteed Note 1 create ambiguity which must be construed in favor of the Kennedy Defendants. An appeals court "reads the contract as a whole, gives contract terms their plain

19

meaning, and construes any ambiguities against the drafter." ***Cain v. Cain***, 967 So. 2d 654, 662-663 (Miss. Ct. App. 2007) (citing ***Persue Entergy Corp. v. Perkins***, 558 So. 2d 349, 352-53 (Miss. 1990)).

¶42. The trial court found that the "guaranty very clearly applies to any and all loans that Crestview, LLC may have made, and not only to loans, but to checks, overdrafts, letters of credit, which is what you guys are referring to note two as now, security documents, endorsements, et cetera. . . . So very clearly, the guaranty applied not only to note one, but also to note two." We agree.

¶43. The guaranty is titled "Continuing Guaranty." The agreement states:

> Guarantor jointly, severally, and unconditionally guarantees to Bank the prompt payment in full of all obligations and liabilities of Borrower to Bank, direct or contingent, due or to become due, now existing or hereafter arising, including, without limitation, obligations to Bank on promissory notes, checks, overdrafts, letter-of-credit agreements, loan agreements, security documents, endorsements and continuing guaranties (collectively, the "Obligations"). . . . Notice of termination of this Guaranty will not be effective until ten (10) days after the notice is delivered to an officer of Bank at the office where the Obligations were borrowed and such officer acknowledges in writing receipt of the notice. . . .
>
> This Guaranty shall be continuing and binding on the person delivering such notice as to (a) any Obligations incurred or arising prior to the Effective Date of written notice of termination of this Guaranty, (b) all renewals, extensions, and modifications of Obligations existing prior to the Effective Date of written notice of termination of this Guaranty and (c) Obligations Bank is bound to permit to be incurred by agreement entered into prior to the Effective Date of written notice of termination of this Guaranty. A notice of termination shall not affect the liability of any person not giving such notice.

In addition, at trial Kennedy admitted that she had been a developer for fifteen years and that she was very experienced in the industry of dealing with banks and borrowing money. Kennedy also admitted to signing the Guaranty Agreement.

¶44.    The terms of the Continuing Guaranty are unambiguous. The language "all obligations and liabilities of Borrower to Bank, direct or contingent, due or to become due, now existing or hereafter arising, including, without limitation, obligations to Bank on promissory notes . . ." clearly encompassed Note 2. And the Kennedy Defendants submitted no evidence that Kennedy had terminated the Guaranty Agreement before Note 2 was executed. Accordingly, the trial court did not err in its finding that Kennedy was personally liable pursuant to Note 2.

**IV.    Whether the trial court abused its discretion in awarding eighteen percent pre- and post-judgment interest on Note 2.**

¶45.    LFK Crestview contends that the trial court had discretion as to whether to award pre- and post-judgment interest, and that pre- and post-judgment interest is not intended to punish the defendant. Note 2, as evidenced by the November 27, 2009, change in terms agreement, stated that it had a four percent per annum interest rate. Upon default, Note 2's terms stated upon default, the interest rate "shall be increased to 18.00% per annum." The trial court awarded Biel REO both pre- and post-judgment interest at eighteen percent.

¶46.    "A trial court's grant or denial of a request for prejudgment interest is reviewed for abuse of discretion." ***Indem. Ins. Co. of N. Am. v. Guidant Mut. Ins. Co.***, 99 So. 3d 142,

156 (Miss. 2012) (quoting ***Aetna Cas. & Sur. Co. v. Doleac Elec. Co., Inc.***, 471 So. 2d 325, 331 (Miss.1985)). Mississippi Code Section 75-17-7 states:

> All judgments or decrees founded on any sale or contract shall bear interest at the same rate as the contract evidencing the debt on which the judgment or decree was rendered. All other judgments or decrees shall bear interest at a per annum rate set by the judge hearing the complaint from a date determined by such judge to be fair but in no event prior to the filing of the complaint.

Miss. Code Ann. § 75-17-7 (Rev. 2016). "Mississippi also acknowledges the judicial authority to award the prevailing party prejudgment interest in breach of contract suits." ***Sunburst Bank v. Keith***, 648 So. 2d 1147, 1153 (Miss. 1995).

¶47.    Under the terms of the contract, LFK Crestview agreed to an eighteen percent interest rate, should the note be defaulted on. Thus, the trial judge awarded Biel REO the interest rate pursuant to the terms of the note. The Kennedy Defendants argue that prejudgment interest "is not imposed as a penalty for wrong doing; it is allowed as compensation for the detention of money overdue." ***Sunburst***, 648 So. 2d at 1153. The trial court did not impose the eighteen percent interest rate as a penalty against the Kennedy Defendants. The trial court imposed the eighteen percent interest rate pursuant to the terms of the document that LFK Crestview willingly signed. The trial court also found that the Kennedy Defendants had waived this issue because they had made no real challenge at trial as to the interest calculations made by Biel REO. Accordingly, we find no merit in this issue.

**V.    Whether the trial court erred in awarding attorneys' fees.**

22

¶48. Lastly, the Kennedy Defendants argue that the trial court erroneously awarded Biel REO attorneys' fees. In the alternative, the Kennedy Defendants argue that the attorneys' fees awarded were: (1) not incurred or paid by Biel REO; (2) unreasonable due to Biel REO's delay; and (3) improper because the trial court had not required Biel REO to produce its identified fee arrangement prior to ruling on the motion for attorneys' fees.

¶49. "An award of attorney's fees must be based on credible evidence, and the trial court must support such an award with factual determinations." ***Tunica Cty. v. Town of Tunica***, 227 So. 3d 1007, 1031 (Miss. 2017) (citations omitted). "[A] trial court's decision regarding attorneys' fees will not be disturbed by an appellate court unless it is manifestly wrong." ***Bay Point Props, Inc. v. Mississippi Transp. Comm'n***, 201 So. 3d 1046, 1057–58 (Miss. 2016), *cert. denied*, 137 S. Ct. 2002, 198 L. Ed. 2d 750 (2017) (citations omitted).

¶50. LFK Crestview argues that most of the bills for attorneys' fees had been billed to Biel Loan Co. Grantor Trust I, not Biel REO. Additionally, some of the attorneys' fees had been billed to Whitney Bank and other separate entities before Biel REO had been assigned Note 2 on March 6, 2012. We find those arguments unpersuasive. Note 2 provides:

> ATTORNEYS' FEES; EXPENSES. Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injuction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

In addition, the Guaranty Agreement stated that the guarantor guaranteed without limitation "all future advances, with interest, attorneys' fees, [and] expenses of collection and costs. . . ." Biel REO points out that it did not seek recovery of fees incurred by Whitney Bank, but only fees associated with "Biel" entities. Although the Kennedy Defendants argue that a separate entity cannot recover attorneys' fees that it did not incur, the entire note along with its right was assigned to Biel REO. Therefore, it is able to recover attorneys' fees as the real party in interest.

¶51.    The trial court also excluded all fees and costs associated with the Florida litigation, because those fees and costs had been included in the Florida court's final judgment. It then made a reasonableness determination pursuant to Mississippi Rule of Professional Conduct 1.5. Rule 1.5 provides:

> (a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent.

¶52.    The trial court found that the time and labor required had not been substantial because no formal discovery was conducted and because most of the time and labor had been

imposed in the Florida litigation. There was no evidence of preclusion of other employment as a result of handling the matter. The biggest dispute was regarding the fees customarily charged in the locality. Biel REO presented an affidavit claiming reasonable fees of $275 to $325 an hour for attorneys and $115 an hour for paralegals. The Kennedy Defendants presented an affidavit stating that reasonable attorneys' fees were $200 an hour for attorneys and $85 for paralegals. The trial court stated that reasonable fees likely were somewhere in the middle. The trial court considered the remaining factors and found that the overall attorneys' fees sought, excluding for the Florida litigation, were reasonable.

¶53.    The Kennedy Defendants next argue that a portion of the attorneys' fees awarded were related to Biel REO's intentional delay tactics. The trial court considered these arguments and held that, excluding the Florida litigation fees, the remaining fees were reasonable, as was the overall amount sought. The trial court found probative the fact that $48,475.50 in attorneys' fees was far less than the percentage recovery of attorneys' fees generally seen in collection cases. We agree and find that the trial court was not manifestly wrong in its determination.

## CONCLUSION

### Direct Appeal

¶54.    Because Biel REO's Fourth Cause of Action in its Complaint put Kennedy on notice that it was pursuing reimbursement according to the terms of the Continuing Guaranty, we find that the trial court erred in its determination that Biel REO was required to amend its

25

pleadings to include the Florida judgments. Accordingly, because the Florida judgments were sufficient evidence of an obligation of LFK Crestview to Biel REO, we reverse and remand the trial court's judgment pertaining to Note 1.[13]

Cross Appeal

¶55.    On cross-appeal, we affirm the trial court's finding that the Kennedy Defendants failed to submit sufficient evidence to prove the assignments were not effective. In addition, this Court holds that the trial court correctly found Kennedy to be personally liable for the indebtedness of LFK Crestview pursuant to Note 2. Lastly, we affirm the trial court's award of pre- and post-judgment interest and its award of attorneys' fees.

¶56.    **ON DIRECT APPEAL: REVERSED AND REMANDED. ON CROSS-APPEAL: AFFIRMED.**

   **WALLER, C.J., RANDOLPH AND KITCHENS, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.**

---

[13]We note that the Florida court found the appropriate interest rate to be 4.75%. Therefore, any interest rate pursuant to Note 1's terms is now moot.