# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CP-01170-COA

**JAY FOSTER**                                                                                      **APPELLANT**

v.

**PAUL KOTSAKOS**                                                                                   **APPELLEE**

DATE OF JUDGMENT:                06/14/2013
TRIAL JUDGE:                     HON. JAMES B. PERSONS
COURT FROM WHICH APPEALED:       HARRISON COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:          JAY FOSTER (PRO SE)
                                 JAMES (JAY) R. FOSTER II
ATTORNEY FOR APPELLEE:           WILLIAM CARL MILLER
NATURE OF THE CASE:              CIVIL - OTHER
TRIAL COURT DISPOSITION:         AWARDED ATTORNEY'S FEES
DISPOSITION:                     AFFIRMED – 09/23/2014
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., ISHEE AND ROBERTS, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1.     This appeal arises from the award by the Harrison County Chancery Court of attorney's fees in a guardianship proceeding involving injuries sustained by a minor in a car accident. Jay Foster, an attorney initially hired by the minor's father and then fired, is appealing the chancellor's award of the majority of the attorney's fees to the attorney subsequently hired to represent the minor.

FACTS

¶2.     K.K., a minor,[1] was injured in a car wreck in December 2011. Acting on her behalf,

---

[1] We use initials to protect the privacy of the minor involved in this matter.

her father, Paul Kotsakos, entered into an attorney's-fee contract with Foster in February 2012. No guardianship proceedings were initiated for the minor and the attorney's-fee contract was not submitted to the chancery court for approval. Dissatisfied with the progress toward settlement, the father fired Foster in July 2012, and retained Billy Miller to represent K.K.

¶3. At the time of Foster's termination, he had done very little work on the case. The file turned over to Kotsakos by Foster had only six documents in it, including the police report supplied to Foster by Kotsakos and some letters from a medical collection agency.

¶4. The tortfeasor involved in the car wreck in which K.K. was injured had only $25,000 in liability insurance coverage, while K.K. had $24,416 in medical expenses. Therefore, the main legal work consisted of getting the insurer to pay the policy limits, negotiating a reduction in medical bills, and drafting the necessary guardianship paperwork, which was all done by Miller. After Miller negotiated a reduction in medical bills, $10,067.36 was left for distribution to K.K. Miller then obtained an order from the chancellor authorizing settlement of K.K.'s claim for the negotiated amount.

¶5. Prior to the settlement of K.K.'s claim, Foster requested over $5,000 in attorney's fees, which he alleged was a reduction in the $9,000 actually owed. Miller claimed that Miller was entitled to one-third of the settlement for the work that he had done.

¶6. The chancellor set the matter for a hearing during which he determined that Miller had done almost all of the work leading to the recovery. Thereafter, the chancellor awarded Miller one-third of the net amount received by K.K. and awarded Foster $500 on a quantum meruit basis.

2

ANALYSIS AND DISCUSSION OF THE ISSUES

¶7.     Foster raises several issues, none of which are dispositive of, or relevant to, the central issue: whether the chancery court erred in awarding attorney's fees to Foster on a quantum meruit basis and in not honoring the contract entered into by Foster and K.K.'s father.  An ancillary issue is whether the amount awarded is reasonable or consistent with the *McKee* factors.[2]  We discuss these issues in turn.

    1.    *The Legality of Foster's Contract*

¶8.     Foster argues that his attorney's-fee contract should be honored even though it involved a minor and was not approved by the chancellor.  Foster's argument ignores the fact that contracts regarding recovery for personal injury to minors are governed by Rule 6.12 of the Uniform Chancery Court Rules.  Rule 6.12 requires court approval of attorney's-fee contracts and trumps the general contract law relied upon by Foster.  Specifically, Rule 6.12 provides:

> Every petition by a fiduciary or attorney for the allowance of attorney's fees for services rendered shall set forth the . . . facts . . . touching his compensation, and . . . the nature and effect thereof.  If the petition be for the allowance of fees for recovering damages for wrongful death or injury, or other claim due the estate, the petition shall show the total amount recovered, the nature and extent of the service rendered and expense incurred by the attorney . . . .  In such cases, *the amount allowed as attorney's fees will be fixed by the Chancellor at such sum as will be reasonable compensation for the service rendered and expense incurred without being bound by any contract made with any unauthorized persons. If the parties make an agreement for a contingent fee the contract or agreement of the fiduciary with the attorney must be approved by the Chancellor.*

(Emphasis added).

---

[2] *McKee v. McKee*, 418 So. 2d 764 (Miss. 1982).

¶9. Foster did not submit his contract for approval by the chancellor prior to his being terminated by K.K.'s father. Therefore, his contract was void, or at least not enforceable against the minor. This issue is without merit.

> 2. *The Reasonableness of the Attorney's Fees Awarded and the Application of the* McKee *Factors*

¶10. In *In re Estate of Baker*, 31 So. 3d 1285, 1288 (¶12) (Miss. Ct. App. 2010), this Court ruled:

> With regard to minors' matters in Mississippi, principles of equity govern. In *Sunnyland Contracting Co. v. Davis,* 221 Miss. 744, 756, 75 So. 2d 638, 639 (1954), the court stated: "Where minors are involved, the courts must necessarily determine the fees; and any contract for fees does not bind the minors." In accordance with *Sunnyland,* this Court does not have to recognize the existing contingency-fee contract. Thus, only equitable principles control the division of attorney's fees in this case.

The court in *In re Estate of Baker* upheld a chancellor's division of ninety percent of fees under a contingency-fee contract to a Mississippi attorney who did most of the work and ten percent to the referring Louisiana attorney who did very little work. *Id.* at 1289 (¶14).

¶11. Foster asserts that the chancellor should have applied the *McKee* factors in determining an appropriate attorney's fee. In *McKee,* the Mississippi Supreme Court held as follows in regard to the determination of attorney's fees:

> The fee depends on consideration of, in addition to the relative financial ability of the parties, the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of the questions at issue, as well as the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case.

*McKee*, 418 So. 2d at 767. The court continued: "[W]e are also of the opinion the allowance of attorney['s] fees should be only in such amount as will compensate for the services

4

rendered. It must be fair and just to all concerned after it has been determined that the legal work being compensated was reasonably required and necessary." *Id.*

¶12. Rule 1.5(a) of the Mississippi Rules of Professional Conduct similarly provides that "a lawyer's fee shall be reasonable." Rule 1.5(a) sets out several factors to be considered in determining reasonableness:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

¶13. Although the chancellor did not recite the *McKee* factors or Rule 1.5(a) in explaining his division of fees, it appears that he fairly apportioned the limited fees between the attorneys based upon their respective work on the case. The chancellor observed that there was only about a $10,000 recovery obtained for the minor and that "chancery courts just don't award attorney's fees in an amount greater than what the client ultimately receives as a general rule." The chancellor correctly referenced Rule 6.12 as guiding his analysis. He noted that "[t]he negotiation of the medical bills[,] . . . [t]he work . . . that secured the settlement[,] and the reduction of the medical bills was all done by Mr. Miller."

¶14. We have reviewed the bill for attorney's fees submitted by Foster, and we agree with the chancellor's finding that almost all of the work resulting in the financial recovery was performed by Miller, not Foster. Therefore, we find that the chancellor did not abuse his

5

discretion in awarding Foster only $500 in attorney's fees. This issue is without merit.

¶15. **THE JUDGMENT OF THE HARRISON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.**