## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-CA-00935-SCT

*TAMMY WEBSTER*

*v.*

*MISSISSIPPI DEPARTMENT OF WILDLIFE,*
*FISHERIES AND PARKS*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/07/2017 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| TRIAL COURT ATTORNEYS: | SAMUEL L. BEGLEY |
| | PETER W. CLEVELAND |
| | MICHAEL FARRELL |
| | HAROLD EDWARD PIZZETTA, III |
| | LEE DAVIS THAMES, JR |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MICHAEL FARRELL |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LEE DAVIS THAMES, JR |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED IN PART AND REVERSED AND REMANDED IN PART - 11/15/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., MAXWELL AND ISHEE, JJ.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.     To encourage noncareer military service, the Uniformed Services Employment and

Remployment Rights Act (USERRA) entitles uniformed service members to prompt civil

reemployment upon completing service.  When Tammy Webster completed her National

Guard training, she requested the Mississippi Department of Wildlife, Fisheries, and Parks

(MDWFP) renew her contract as a part-time dispatcher. When MDWFP refused to rehire her, Webster filed a USERRA claim in state court, successfully proving MDWFP violated her federal statutory right to reemployment. Though the prevailing party, Webster appeals, challenging both her compensation award of $7,589—one year's worth of lost part-time wages—and her attorney-fee award of $2,800.

¶2. We hold that the trial court did not err in limiting Webster's compensation to one year of lost wages. Webster had been employed under yearly contracts that were not automatically renewable. While USERRA required MDWFP to reemploy her, it was under no statutory obligation to employ her *indefinitely*. So the compensation award is reasonably linked to what Webster lost due to MDWFP's failure to comply with USERRA.

¶3. That said, we reverse and remand the remainder of the judgment. First, the trial court failed to rule on Webster's liquidated-damages claim, even though Webster presented evidence MDWFP's USERRA violation was "willful," as that term is used in the statute. Second, the trial court arbitrarily assigned $2,800 as a reasonable attorney fee, without considering the time spent by or hourly rate of Webster's counsel or any other relevant factor. Third, the trial court taxed Webster her respective court costs, even though USERRA prohibits claimants from being taxed with costs.

¶4. Therefore, we affirm in part and reverse and remand in part the trial court's judgment.

## Background Facts and Procedural History

### I. Webster's USERRA Claim

¶5.     In 2011, Webster was working as a part-time dispatcher for MDWFP when she decided to enlist in the Mississippi Air National Guard.  She was ordered to attend training for six months.  Before she left, Webster informed MDWFP of her upcoming service. During training, she kept in contact with MDWFP, letting her supervisor know her orders had been extended two months.  And when training finally ended eight months later in January 2012, she asked to be placed back on the dispatch schedule.

¶6.     But MDWFP did not renew her contract for 2012, citing scheduling conflicts with Webster's full-time, police-department job and a reduced need for part-time dispatchers. MDWFP refused to rehire Webster even when she informed her supervisor, who had served in the National Guard thirty years, that MDWFP was violating USERRA.

¶7.     USERRA is federal legislation enacted to encourage noncareer uniform service by eliminating the the disadvantages such service has on civilian careers and employment.  38 U.S.C. § 4301(a)(1) (2012).  USERRA prohibits employment decisions motivated by discrimination based on service.  38 U.S.C. §§ 4301(a)(3), 4311 (2012).  USERRA also provides service members a statutory right to prompt reemployment upon completion of a period of service.  38 U.S.C. §§ 4301(a)(2), 4312-4313 (2012).  Claiming that MDWFP violated this latter statutory right to prompt remployment, Webster filed an action against her state-agency employer in Hinds County Circuit Court.  *See* 38 U.S.C. § 4323(b)(2) (2012) (permitting a plaintiff to bring a USERRA claim in state court when the action is against the

state). Following a bench trial, the trial court ruled Webster had prevailed on her USERRA claim.[1]

¶8. Unlike a § 4311 discrimination claim, to prove her failure-to-reemploy claim, Webster did not have to show her service was a motivating factor in MDWFP's decision not to renew her contract. ***Petty v. Metro. Gov't of Nashville & Davidson Cty.***, 687 F.3d 710, 716 (6th Cir. 2012). Instead, § 4312 "provides for nearly strict liability for failure or refusal to promptly reemploy a returning service member to his or her former employment." ***Mace v. Willis***, 259 F. Supp. 3d 1007, 1016 (D. S.D. 2017). All Webster had to prove—and did prove—is that (1) she gave advance notice of her service to her employer; (2) her cumulative length of absences did not exceed five years; and (3) she timely submitted an application for reemployment. *See* ***Sumrall v. Ensco Offshore Co.***, No. 2:17-CV-48-KS-MTP, 2018 WL 2088761, at *4 (S.D. Miss. May 7, 2018) (citing 38 U.S.C. § 4312(a), (e)(1)(D)). The burden then shifted to MDWFP to prove one of the two available[2] statutory affirmative defenses—(1) MDWFP's "circumstances ha[d] so changed as to make such reemployment impossible or unreasonable"; or (2) Webster had "no reasonable expectation" to continued

---

[1] MDWFP conceded Webster's active-duty training in the Mississippi Air National Guard qualified her for USERRA's protections and benefits. *See* 38 U.S.C. § 4303(13) (2012) (defining "service in uniformed services") and 38 U.S.C. § 4303(16) (2012) (defining "uniformed services").

[2] Section 4312 actually provides three affirmative defenses. But the second, "undue hardship" provision does not apply to Webster because she was not "a person entitled to reemployment under subsection (a)(3), (a)(4), or (b)(2)(B) of section 4313." 38 U.S.C. § 4312(d)(1)(B).

employment because the position she left was for "a brief, nonrecurrent period." 38 U.S.C. § 4312(d)(1)(A), (d)(1)(C).

¶9.    MDWFP had argued both that the need for part-time dispatchers had decreased and that Webster had no reasonable expectation in reemployment since she knew part-time dispatcher's contracts were not automatically renewable. The trial court rejected MDWFP's first argument, finding MDWFP's had "offered little credible proof that the need for part-time dispatchers decreased."  The trial court also found Webster's expectations of reemployment to be reasonable.  Webster's annual contract had been renewed four times prior to her service.  And during her service, MDWFP gave no indication her contract would not be renewed upon completing service.  While at trial MDWFP pointed to Webster's deficient work habits and scheduling conflicts with her full-time job, the trial court found these excuses not to rehire Webster to be "superficial since no efforts to resolve the alleged issues were raised and/or resolved with Webster **prior** to her deployment."  (Emphasis in original.)  Having rejected MDWFP's defenses, the trial court held MDWFP strictly liable for its failure promptly reemploy Webster when her service ended.

## II.    Trial Court's Judgment

¶10.    As relief, USERRA provides that a court may (A) order the employer to comply with the act, (B) award compensatory damages, and (C) if the court find the USERRA violation was "willful," further award an amount equal to the compensatory damages as liquidated damages. 38 U.S.C. § 4323(d)(1) (2012).  The court also has the discretionary authority to award a prevailing employee reasonable attorney fees and litigation expenses.  38 U.S.C.

5

§ 4323(h)(2) (2012). Webster requested all these forms of relief—reinstatement, compensatory damages, liquidated damages, and attorney fees and expenses. Specifically, Webster claimed she was entitled to four-and-a-half years of back pay from the time her contract was not renewed in early 2012 to the time of the bench trial in mid-2016, which Webster calculated to be almost $44,000. Webster based her calculation on the $9,716.29 in part-time wages she earned in 2009—her highest earning year.

¶11. The trial court did not order Webster be reinstated, nor did the court award Webster four and a half years' worth of back pay. Instead, the trial court found Webster had been "entitled to reemployment for the 2012 contractual year" only. Specifically, the court found it had no authority to require MDWFP to reemploy Webster beyond the yearly contract term, because MDWFP could have decided not to renew Webster's contract after 2012 without violating USERRA. Using the amount of part-time wages Webster earned in 2010—her last full year of work before enlisting—the trial court awarded Webster $7,549 "as liquidated damages."

¶12. The court also exercised its discretion to award reasonable attorney fees and expenses, "opin[ing] that attorney fees in the amount of $2,800 is sufficient for all litigation costs and trial expenses." Finally, the judge taxed all court costs and fees "to the respective parties."

**Issues on Appeal**

¶13. Though the successful party, Webster has appealed to this Court, challenging the trial court's monetary award. MDWFP has not cross-appealed. So the trial court's ruling that

6

MDWFP violated USERRA by not renewing Webster's contract for 2012 is outside the scope of this Court's review. And this appeal is limited to reviewing the trial court's remedy.

¶14. As to that remedy, Webster claims:

(1) The trial court erred in awarding one year of back pay only instead of "the normal recovery period under USERAA" from non-reemployment to judgment.

(2) The trial court erred in not awarding liquidated, or double, damages in light of the proof of MDWFP's willful violation of USERAA.

(3) The trial court erred in *sua sponte* awarding an arbitrary amount of attorney fees and expenses without reviewing a statement of the attorney's hours and hourly rate and a bill of actual costs.

(4) The trial court erred in not calculating legal fees based on the lodestar method.

¶15. Because the court's judgment followed a bench trial, this Court applies the same deferential standard of review that it would for a chancellor. ***City of Jackson v. Perry***, 764 So. 2d 373, 376 (Miss. 2000). The circuit judge's factual "findings are safe on appeal where they are supported by substantial, credible, and reasonable evidence." ***Id.*** (citations omitted). But her legal rulings are reviewed de novo. ***Id.***

**Discussion**

**I.    Compensatory Damages**

¶16. To begin, while the trial court labeled the $7,549 award "liquidated damages," it is clear from the context of the order that this award was not "liquidated damages" as envisioned by USERRA. The phrase "liquidated damages" refers to an award of double the compensatory damages for a *willful* violation of USERRA. 38 U.S.C. § 4323(d)(1)(C). The

$7,589 was not double the compensatory damages. It *was* the compensatory damages. Despite the confusing label, the trial court clearly intended to compensate Webster $7,589 for wages she would have earned had MDWFP complied with USERRA and renewed her yearly contract. *See* 38 U.S.C. § 4323(d)(1)(B).

¶17. Webster argues the trial judge erred by limiting her "back pay"[3] to one year. Webster concedes the trial court was within its discretion to use her most recent year of wages, versus her highest year of wages, to calculate what she would have earned that year. But she strongly contests the trial judge's limiting her compensation to one year. Citing numerous Title VII cases,[4] Webster claims the recovery period in employment cases is the time between the discriminatory act and the date of the judgment, which in this case was five and a half years.[5]

¶18. Because relatively few cases address USERRA damages, federal courts often look to other federal employment discrimination cases for guidance. *E.g.*, ***Hance v. Norfolk S. Ry. Co.***, 571 F.3d 511, 519-20 (6th Cir. 2009) (applying Title VII's burden of proof for proving damages). That said, this is not an employment-discrimination case. Webster did not bring

---

[3] "Back pay" typically refers to the wages lost between the time of the USERRA violation and court-ordered reinstatement. *E.g.*, ***Petty***, 687 F.3d at 717-19. Here, the trial court did not order Webster be reinstated—a decision she does not challenge on appeal. Tracking the language of § 4323(d)(1)(B), we refer to the $7,589 award as "compensation" and not "back pay."

[4] Title VII of the Civil Rights Act of 1964 prohibits employment discrimination based on an individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a) (2012).

[5] The trial court's final judgment was not entered until a year after trial, hence the extra year added to her damages claim post-trial.

a discrimination claim under § 4311. Instead, she brought a strict liability failure-to-reemploy claim under §§ 4312 and 4313.

¶19. This distinction is important for two reasons. One, back pay is intended to advance the statutory purpose "of eradicating discrimination . . . and making persons whole for injuries suffered through past discrimination." ***Albemarle Paper Co. v. Moody***, 422 U.S. 405, 421, 95 S. Ct. 2362, 45 L. Ed. 2d 280 (1975). So without a discrimination claim, the reason to award back pay is not present. Second, USERRA's language specifically links available compensation to the "loss of wages or benefits suffered by reason of such employer's failure to comply with the provisions of this chapter." 38 U.S.C. § 4323(d)(1)(B). Thus, *how* MDWFP failed to comply with USERRA matters when determining if the trial court was within its discretion when awarding compensation.

¶20. MDWFP failed to comply with USERRA by not promptly reemploying Webster upon the completion of her service. Stated differently, *had* MDWFP complied with §§ 4312 and 4313, it would have promptly renewed Webster's contract for 2012. As the trial court rightly recognized, that was all USERRA required. MDWFP had no obligation to employ Webster *indefinitely* based on her service. Instead, what USERRA does guarantee is reemployment for one year, absent cause for termination.[6] ***Serricchio v. Wachovia Sec., LLC***, 556 F. Supp. 2d 99, 108 (D. Conn. 2008) (citing 38 U.S.C. § 4316(c)(1)). So the trial court was right.

---

[6] This one-year guarantees applies to employees whose period of service was greater than 180 days. 38 U.S.C. § 4316(c)(1) (2012).

MDWFP "might well have ended her contract after 2012" without running afoul of USERRA.[7]

¶21.   Thus, the $7,589 award was not an abuse of discretion, because it reasonably reflects the "loss of wages . . . [Webster] suffered by reason of [MDWFP's] failure to comply with [§§ 4312 and 4313]."  38 U.S.C. § 4323(d)(1)(B).

¶22.   We note our conclusion would be the same, even if we were to apply, as Webster urges, the presumption that "prevailing plaintiffs in employment discrimination cases are '. . . entitled to back pay until the date of judgment has been entered in the case.'"  *Hance*, 571 F.3d at 521 (quoting *EEOC v. Wilson Metal Casket Co.*, 24 F.3d 836, 840 (6th Cir. 1994)). Even with this presumption, "back-pay awards should make a plaintiff whole, not better off." *Id.*  And based on these facts, were Webster to be awarded multiple years' worth of wages, instead of one year, she would be better off.  This is so because MDWFP's only obligation under USERRA was to renew her 2012 contract.  Moreover, "[i]n the Title VII context, . . . the plaintiff bears the burden of proving damages and is 'entitled to the amount claimed unless the defendant can prove otherwise.'"  *Id.* at 519-20 (quoting *Wilson Metal Casket Co.*, 24 F.3d at 840).  Though Webster claimed she was entitled to $9,716 in damages each year for every year between the time she was denied reemployment until the time of judgment, the trial judge essentially found her employer MDWFP had proven otherwise. Because Webster's annual contract was not automatically renewable, the trial judge

---

[7] That is not to say all failure-to-rehire employment cases should be limited to one year of wages based on § 4316.  Our analysis would be different had the facts not clearly shown Webster was employed under yearly contracts that had to be renewed.

10

determined Webster was entitled to a year's worth of lost part-time wages. This determination is entitled to deference, since it is supported by substantial evidence and does not contradict federal law.

¶23. Thus, we affirm the trial court's $7,589 compensatory-damages award.

## II. Liquidated Damages

¶24. Again, despite the trial court's label, the $7,549 award was not "liquidated damages." As used in USERRA, the term "liquidated damages" refers to the trial court's requirement that an employer pay "an amount equal to the amount . . . [awarded under § 4323(d)(1)(B)] as liquidated damages, if the court determines that the employer's failure to comply with the provisions of this chapter was willful." 38 U.S.C. §4323(d)(1)(C).

¶25. The trial court did not award double damages. Nor did it expressly determine if MDWFP's failure to comly with USERRA was willful. Webster claims this was error. We agree. Not only did Webster request liquidated damages, but also she presented evidence that MDWFP's USERRA violation was willful.

¶26. A USERRA "violation shall be considered to be willful if the employer either knew or showed reckless disregard for whether its conduct was prohibited by the Act." 20 C.F.R. § 1002.312(c) (2018). *See also **Duarte v. Agilent Techs., Inc.***, 366 F. Supp. 2d 1039, 1048 (D. Colo. 2005) (applying ADEA case ***Trans World Airlines, Inc. v. Thurston***, 469 U.S. 111, 125, 105 S. Ct. 613, 83 L. Ed. 2d 523 (1985), which interpreted "willful" to mean "that an employer engaged in conduct known to be prohibited or engaged in conduct with reckless disregard of its prohibition"). And here, Webster presented evidence that her supervisor,

11

who served in the National Guard for thirty years, was familiar with USERRA and its requirements.

¶27. MDWFP counters that liquidated damages were not warranted because Webster failed to prove intentional discrimination under § 4311. What MDWFP misses, however, is that "[w]illfulness is not the same as discrimination." *Mace*, 259 F. Supp. 3d at 1022. Again, MDWFP was found to have violated § 4312, not § 4311. Section "4312 is a rather strict-liability statute. Section 4311 is not." *Id.* So an employer "could be willful about [its] violation of § 4312 without having a discriminatory motivation." *Id.*

¶28. That said, "[m]erely knowing that a military beneficiary was asserting a USERRA claim is not, by itself, reckless disregard where, for example, the employer's decision was based on the exercise of a business judgment such as the employer's financial hardship." *Id.* MDWFP presented evidence its decision was strictly a business judgment. While the trial judge's order largely discredited MDWFP's justifications for not rehiring Webster, in the absence of an express finding on this issue, we are hesitant to find on appeal that MDWFP's USERRA violation was willful.

¶29. Instead, we remand this issue to the trial court to determine, based on the evidence already presented at the bench trial, whether MDWFP's USERRA violation was "willful," as that term is defined for USERRA purposes, and, if so, whether MDWFP should have to pay Webster an additional $7,589 as liquidated damages.

### III. Attorney Fees and Expenses

¶30. We also reverse the $2,800 attorney-fee award and remand this issue to the trial court.

¶31. USERRA authorizes the trial court to award a prevailing USERRA plaintiff "reasonable attorney fees, expert witness fees, and other litigation expenses." 38 U.S.C. § 4323(h)(2). "The fixing of reasonable attorneys' fees is a matter ordinarily within the sound discretion of the trial court." *Mauck v. Columbus Hotel Co.*, 741 So. 2d 259, 269 (Miss. 1999) (citing *Gilchrist Tractor Co. v. Stribling*, 192 So. 2d 409, 418 (Miss. 1966)). But to determine a reasonable fee, this Court has directed trial courts to apply the "lodestar method"—i.e., the number of hours reasonably expended, multiplied by a reasonable hourly rate—as well as "consider the eight factors enumerated in Rule 1.5 of the Mississippi Rules of Professional Conduct."[8] *Collins v. Koppers, Inc.*, 59 So. 3d 582, 593 (Miss. 2011) (quoting *In re Estate of Gillies*, 830 So. 2d 640, 646 (Miss. 2002)).

¶32. Here, the trial court's "opinion that attorney fees in the amount of $2,800 is sufficient for all litigation costs and trial expenses" may very well be reasonable. But the trial judge's order is void of any explanation for that figure. According to Webster's counsel, he was never asked to submit to the court the "lodestar" calculation figures—the number of hours worked on Webster's case and his hourly rate. Nor does it appear that the trial judge considered any of the factors in Rule 1.5 of the Mississippi Rules of Professional Conduct.

---

[8] While Webster cites federal law for how attorney fees should be calculated, § 4323(b)(2) directs that a USERRA action brought against a state employer in a state court shall be "in accordance with the laws of the State." 38 U.S.C. § 4323(b)(2). Thus, Mississippi law on calculating reasonable attorney fees controls. That said, Mississippi law is consistent with federal law, adopting the United States Supreme Court's "lodestar" method for calculating reasonable attorney fees. *Mauck*, 741 So. 2d at 271 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)).

13

¶33. We reverse the $2,800 award and remand the attorney-fees-and-expenses issue to the trial court to reconsider what amount would be reasonable in light of the number of hours worked, Webster's counsel's hourly rate, and the eight factors listed in Rule 1.5.

## IV. Court Costs

¶34. Finally, the order taxed "[a]ll court cost and fees . . . to the respective parties." But USERRA prohibits taxing Webster with court costs. Under § 4323, "No fees or court costs may be charged or taxed against any person claiming rights under this chapter." 38 U.S.C. § 4323(h)(1). Taxing Webster with her respective costs not only runs afoul of the clear prohibition in § 4323(h)(1), but it also cuts against the pro-employee policy embodied in this provision, which encourages claimants to bring USERRA actions without fear of being taxed costs. So we reverse the portion of the order taxing Webster with her respective costs and remand this issue to the trial court to assess costs in a manner compliant with § 4323(h)(1).

## Conclusion

¶35. The trial court was within its discretion to award $7,589, or the amount of part-time wages Webster lost when MDWFP failed to comply with USERRA and renew her contract for 2012. But the trial court abused its discretion when it failed to rule on Webster's liquidated-damages claim, arbitrarily awarded $2,800 in attorney fees without considering the lodestar method, and taxed Webster with costs. We thus affirm the $7,589 compensatory award, but we reverse and remand the issues of liquidated damages, attorney fees and expenses, and court costs.

¶36. **AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.**

14

**WALLER, C.J., RANDOLPH AND KITCHENS, P.JJ., KING, COLEMAN, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.**