# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00143-COA

| | |
|---|---|
| IN THE MATTER OF THE ESTATE OF RUTH BOURNE, DECEASED: BAILEY LAW PLLC | APPELLANT |

v.

| | |
|---|---|
| MORGAN & MORGAN PLLC | APPELLEE |

| | |
|---|---|
| DATE OF JUDGMENT: | 01/09/2018 |
| TRIAL JUDGE: | HON. ANTHONY ALAN MOZINGO |
| COURT FROM WHICH APPEALED: | JEFFERSON DAVIS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | CHYNEE ALLEN BAILEY |
| | JOHN CURTIS HALL II |
| ATTORNEY FOR APPELLEE: | PHILIP W. THOMAS |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 08/27/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.     This appeal is about an attorney-fee dispute between two firms that represented Arneetria Bourne (Arneetria) and other family members of Ruth Bourne (Ruth) at different stages of their mother's wrongful death lawsuit.[1] The Jefferson Davis County Circuit Court awarded 95% of the fee to Morgan & Morgan PLLC (Morgan & Morgan) and 5% to Bailey

---

[1] In the record, there is a contingency fee contract signed only by Arneetria, individually, with Morgan & Morgan P.A. The lawsuit was initiated in Arneetria's name, individually, as well as the Estate of Ruth Bourne. But the settlement release named each heir individually and as "Statutory Wrongful Death Beneficiaries." During the later fee dispute hearing, it was undisputed that both Morgan & Morgan and Bailey Law PLLC represented the heirs of Ruth Bourne at different points in time.

Law PLLC (Bailey).[2]  Bailey appeals.  Based on our review of the record and the circuit court's opinion, we reverse and remand.

## FACTS

¶2.     On April 9, 2011, Ruth suffered bilateral hip fractures from an accident while being transported by Grove Transportation.  She eventually died from these injuries, and her daughter Arneetria retained the Morgan & Morgan law firm[3] in Jackson to file a civil complaint for wrongful death.  According to an April 19, 2011 retainer agreement with Morgan & Morgan P.A., Arneetria agreed to pay the law firm 40% of any potential total monetary recovery, and she agreed to the contract provision that stated:

> (3) If Client seeks to dismiss Attorney, Client hereby agrees that Attorney shall have a lien against any recovery by Client for any and all of Attorney's unreimbursed expenses and for reasonable attorney's fees measured by the value of the Attorney's services and the risks undertaken by Attorney.

¶3.     Between April 2011 and March 2016, while at Morgan & Morgan, the case was assigned to three different attorneys: Joel Gatlin, John Hall, and Sam Creasy.

### 1.     Joel Gatlin's Work

¶4.     There was no affidavit from Gatlin concerning the work he contributed to the case.

---

[2] The owner of Bailey Law PLLC is Chynee Bailey (Attorney Bailey).

[3] As will be discussed later, there are two entities: Morgan & Morgan PLLC and Morgan & Morgan P.A.  We will refer to them both as "Morgan & Morgan" until it is necessary to distinguish them.

According to Morgan & Morgan's case "Comments records,"[4] on May 13, 2011, Gatlin: spoke to the client; obtained information about the driver and the driver's employer, Grove Transportation; and, investigated the employer's contract with a company named Logisticare. He directed legal assistants to secure medical records and spoke to a person named Regina at the dialysis unit about being a witness. Shortly thereafter, Gatlin ascertained who the defendants would be. Between May 2011 and September 2012, Mr. Gatlin obtained and reviewed medical records, phoned potential experts and spoke to a loan company at Arneetria's request. He directed legal assistants to open the estate, but although Arneetria signed the petition, the estate work was not filed. Nor was any lawsuit drafted or filed. The last entry of any work Gatlin contributed to the case was in February of 2013.

¶5.    Between February 2013 and April 2014, the Comments record reflects no legal work by an attorney, only work by legal assistants, who were primarily providing information to Arneetria's litigation loan company.[5]

    2.    *John Hall's Work*

¶6.    According to John Hall's affidavit, when he was assigned the case in April 2014, he immediately filed the wrongful death action. He also stated that, for the most part, paralegals took care of dealing with lienholders and preparing pleadings and discovery materials. The

---

[4] The "Comments record" is the firm's running record of work on a case with dated entries by staff who performed the task.

[5] During the pendency of the case, Arneetria borrowed money using the lawsuit as collateral.

Comments records in 2014 and 2015 confirm that paralegals were the ones who spoke with Arneetria, answered discovery questions with her over the phone, and gave updates. The Comments records also show that legal assistants mailed discovery and provided medical records to the defense counsel.

¶7. Although Hall did not make entries into the Morgan & Morgan Comments record system, he claims he reviewed the complaint and discovery materials sent to the defendants, spoke with the client, prepared for and took the deposition of the driver of the transport van, and defended the depositions of Arneetria and other family members. He estimated that he spent a total of 22.5 hours on the case while at Morgan & Morgan. He also estimated that paralegals spent a total of 16.5 hours on the case. Of those paralegal hours, 6.5 were performed while he was assigned to the case, and the rest were done before and after he left. Hall left Morgan & Morgan in August 2015, and Sam Creasy inherited the case.

### 3. Sam Creasy's Work

¶8. Sam Creasy said in his affidavit that he worked 20 hours on the case. But based on the documents in the record, it appears that he only spoke to Arneetria about the status of the case and her desire for a loan, talked to a loan company on her behalf, and exchanged two emails with defense counsel. In one email, the defense counsel asked Creasy if he had reviewed the case, and in the other dated November 2015, defense counsel discussed possible mediators. Creasy took no action on defense counsel's offer to mediate. Arneetria terminated her relationship with Morgan & Morgan in February 2016. At this point, neither

4

party had made a settlement offer. In the nearly five years that it had the case, Morgan & Morgan had only obtained medical records, identified witnesses and parties, filed the lawsuit, exchanged written discovery and participated in four depositions – three initiated by the defense and one by the Morgan firm. Trial on the lawsuit had not been set and no estate work was filed.

### 4. *Attorney Bailey's Work*

¶9. In March 2016, Arneetria hired Chynee Bailey, a solo practitioner in Columbus, Mississippi, and her law firm, Bailey Law PLLC, with whom Arneetria signed a contingency fee contract. By accepting the case, Bailey assumed the future costs and risks of the litigation. Attorney Bailey advised Morgan & Morgan of the representation and asked for its lien twice in March 2016. Attorney Bailey was advised they were working on it.

¶10. According to Attorney Bailey's affidavit, she spent 9 hours reviewing the file, which contained 6,473 pages that included 2,500 pages of medical records. She contacted the defense counsel about a scheduling order, called the court administrator for potential trial dates, and drafted a scheduling order which she said took 2 hours. She was able to get the matter set for mediation and traveled to Jackson to meet with her clients on July 18, 2016. She made a second trip on July 20, 2016, for the mediation. Between these two meetings, she said she worked 19 hours.

¶11. Bailey associated Hall to help with the mediation. Hall said he spent time reviewing the file, preparing the mediation memorandum, and attending the mediation with Attorney

5

Bailey. But during the argument, the court was informed that Hall was making no personal claim for attorney fees.[6] Therefore, Hall's post-Morgan & Morgan hours would not be counted for either side.

¶12. Bailey settled the case at mediation for $115,000. But in order to consummate the settlement, Attorney Bailey stated she had to open the estate and prepare the estate documents, because the estate had not been opened by Morgan & Morgan when the lawsuit was filed. Moreover, because the litigation had been pending so long, the litigation loans obtained by Arneetria now amounted to over $71,000. Attorney Bailey had to deal with this lien as well as liens from Medicaid and Medicare. Attorney Bailey filed the estate petition and drafted the petition to determine heirship. Attorney Bailey worked 4 hours on these materials and another 6 hours negotiating with the litigation lienholder. Attorney Bailey also said she spent another 18 hours dealing with her clients through this post mediation process until they were able to get their money.[7]

     5.    *Fee Dispute*

---

[6] This statement effectively moots the provision in Hall's Morgan & Morgan employment contract which would have given a two-third's interest in the legal fee to Morgan & Morgan had Arneetria hired Hall as her attorney when he left the firm.

[7] Although not specifically mentioned, we do note that opening an estate requires not only the filing of a petition but also the preparation of joinders or service on known heirs, presentation of the petition to the chancery court, publication for creditors, and other work. Mississippi Code Annotated section 91-7-1 et seq. (Rev. 2018). Moreover, because the estate had filed a wrongful death lawsuit, a separate hearing to determine heirs had to be held requiring a separate publication for unknown heirs and joinders by known heirs. *In re Estate of Richardson*, 695 So. 2d 587, 588 (Miss. 1997). In other words, estate work can be time consuming and labor intensive.

¶13. Bailey's retainer agreement with Bourne included a contingency payment of 40% of recovery for attorney fees, which totaled $46,000. In November 2016, Bailey again contacted Morgan & Morgan for its lien. Morgan & Morgan did not respond but filed a motion to intervene in the proceedings, which the circuit court granted over Bailey's objection. Morgan & Morgan PLLC filed its complaint in intervention against Grove Transportation Company, seeking an order allowing Morgan & Morgan to interplead regarding the attorney fees, and then it filed a motion to apportion the attorney fees. Meanwhile, Bailey filed a motion for enforcement of the settlement against Grove Transportation because her clients had not been paid. Grove then paid the settlement amount and instituted an interpleader regarding the attorney fees.

¶14. In its motion to apportion fees, Morgan & Morgan claimed that it was entitled to 95% of the fee for its contribution to the case. In support, Morgan & Morgan provided a copy of the original retainer agreement, the Comments case records, and an affidavit of the managing attorney, Greg Bossler, who was not involved in the case but summarized what he concluded was Morgan & Morgan's contribution to the case. Morgan & Morgan also submitted a letter from Grove's counsel, summarizing from his perspective what the law firm contributed to the case, and an affidavit and letter from Paul Ott, a Jackson attorney, who opined that Morgan & Morgan was entitled to 95% of the fee. Morgan & Morgan later submitted Creasy's affidavit and a second affidavit of Bossler, who calculated that the total time paralegals spent working on the case was 39.5 hours, and total time attorneys spent working

7

on the case was 62.5 hours (including Bossler's estimate of 20 hours for Gatlin's work time, the 22.5 hours Hall said he worked, and the 20 hours Creasy claimed he worked). Bossler also attached John Hall's Morgan & Morgan employment contract and an email that Bailey sent to the defense counsel prior to mediation saying that the "lion's share of the discovery has been done."[8]

¶15. In response, Bailey presented Attorney Bailey's and Hall's affidavits. To impeach Ott's opinion, Attorney Bailey attached a similar affidavit and letter Ott had written for Morgan & Morgan in another case. The letter was surprisingly similar to the one in this case; Ott had concluded that Morgan & Morgan was entitled to 95% of the fees in that case as well. Bailey also countered Ott's opinion with an affidavit of Attorney Ronald Roberts, a former chairman of the Fee Dispute Committee for the Mississippi Bar. He opined that there was no proof on key elements required under Rule 1.5(a)(1) of the Mississippi Rules of Professional Conduct, which outlines the factors to consider in arriving at a reasonable division of fees. Roberts also felt there was no basis for Morgan & Morgan to claim 95% of the fees. Utilizing John Hall's affidavit, Roberts concluded that Morgan & Morgan was entitled to $7,687.50.

6.   *Circuit Court's Opinion*

---

[8] Attorney Bailey's comment should be read in context. The record shows that Attorney Bailey told the defense counsel that she had spoken with the court administrator about the next available trial date in July 2016. Attorney Bailey's comment was an effort to convince the defense counsel that such a date was reasonable and that the case was ready for trial.

¶16.    The circuit court heard arguments on November 17, 2017.  At that point, the client's portion of the settlement and the two firms' expenses had been paid.  Bailey argued for the first time that Morgan & Morgan PLLC had no standing to ask for fees because the contract that Arneetria signed was with Morgan & Morgan PA, a different and separate entity from Morgan & Morgan PLLC, which had intervened and filed the motion.   At the conclusion of the hearing, the circuit court asked counsel to supplement the record with any contemporaneous records, which both parties did.

¶17.    Thereafter on December 12, 2017, Bailey filed a "Second Supplemental Response," indicating that she had just obtained affidavits that John Morgan gave in another case.[9]  In that legal malpractice case, John Morgan said that he was a member of Morgan & Morgan PLLC and that the employees in the Jackson office are employees of Morgan & Morgan PLLC.  Morgan & Morgan sought to strike Bailey's second supplemental response, saying that it was untimely and that if the wrong related corporate entity was named, then the remedy would simply be to substitute the correct entity.

¶18.    On January 8, 2018, the court issued its ruling, citing a Mississippi federal district court case[10] that had applied Alabama law regarding the apportionment of attorney fees. That district court held that fees should be divided on a quantum meruit basis, and the circuit court

---

[9] Motion to Dismiss, Exhibit B, Affidavit of John Morgan, *Hardigree v. Morgan and Morgan PLLC*, No. 15-532 (Hinds Cty. Cir. Ct. Nov. 13, 2015)

[10] *Thornton v. Clark County*, No. 4:08cv139, 2012 WL 6569378 (S.D. Miss. Dec. 16, 2012).

agreed. The court noted that identical units of a professional's time were not worth the same amount, but it did not specifically deal with the hours the two firms spent on the case. The court determined that Morgan & Morgan had acquired the case and developed it for over two years and that Bailey worked on the case for only two months before the parties settled the matter. The circuit court also recognized the inequity of having a law firm prepare a great majority of a case only to have the rug pulled out from under it by another firm which benefitted by achieving a swift but successful conclusion, saying "Morgan acquired the case, developed it, worked it, undertook much risk for over two years where only to have Bailey work the case for roughly two months before settlement." The court then adopted Ott's opinion that Morgan & Morgan contributed 95% of the effort and should recover 95% of the fee ($43,700). Bailey would recover only $2,300. The court made no ruling on standing.

¶19.    Feeling aggrieved, Bailey filed a "Petition for Interlocutory Appeal" on January 29, 2018. On February 21, 2018, the Mississippi Supreme Court determined that the circuit court's order apportioning attorney fees was a final judgment and deemed the interlocutory filing as Bailey's notice of appeal. On appeal, Bailey raises three issues: (1) the trial court's alleged error in apportioning the fees, (2) Morgan & Morgan PLLC's standing, and (3) procedural limits or ethical bars to Morgan & Morgan's recovery.

**STANDARD OF REVIEW**

¶20.    "Standing" is a jurisdictional issue which may be raised by any party or the Court at any time. *City of Madison v. Bryan*, 763 So. 2d 162 (¶20) (Miss. 2000). "Appellate courts

10

'will not reverse the trial court on the question of attorney['s] fees unless there is a manifest abuse of discretion in making the allowance.'" *Jones v. Pruitt (In re Estate of Jones)*, 243 So. 3d 212, 221 (¶25) (Miss. Ct. App. 2017), *cert. denied sub nom*. *Jones v. Pruitt*, 246 So. 3d 70 (Miss. 2018). An appellate court will not disturb an award of attorney's fees unless it is manifestly wrong or the trial-level court applied an incorrect legal standard. *Biel Reo LLC v. Lee Freyer Kennedy Crestview LLC*, 242 So. 3d 833, 845 (¶49) (Miss. 2018); *Estate of McLemore v. McLemore*, 63 So. 3d 468, 484 (¶45) (Miss. 2011); *In re Guardianship Estate of Baker*, 31 So. 3d 1285, 1287 (¶4) (Miss. Ct. App. 2010). A trial court's award of attorney fees must be based on credible evidence, and the trial court must support such an award with factual determinations. *Biel Reo LLC*, 242 So. 3d at 845 (¶49).

## DISCUSSION

### I. Standing

¶21. Bailey raised the issue of Morgan & Morgan PLLC's standing to intervene or seek attorney fees. The circuit court made no ruling on this issue. Bailey argues that Arneetria contracted with Morgan & Morgan P.A. for legal services, not Morgan & Morgan PLLC. Bailey argues that Morgan & Morgan P.A. is a foreign corporation that is not licensed to do business in Mississippi, and therefore cannot initiate actions in Mississippi courts. Morgan & Morgan PLLC argues that Bailey waived the issue when she did not raise it in her objection to the motion to intervene or in her answer to the complaint in the intervention. Moreover, Morgan & Morgan PLLC says, if necessary, Morgan & Morgan P.A. can easily

11

be substituted if indeed it was the real party in interest.

¶22. Standing, being a jurisdictional question, can be challenged at any time. *Rosenfelt v. Miss. Dev. Authority*, 262 So. 3d 511, 515 (¶12) (Miss. 2018). Thus, lack of standing cannot be waived.

¶23. In Mississippi, parties have standing to sue when they assert a colorable interest in the subject matter of the litigation. *Miss. Manufactured Housing Ass'n v. Bd. of Aldermen of Canton*, 870 So. 2d 1189, 1192 (¶8) (Miss. 2004). A legal interest or entitlement to assert a claim must be grounded in some legal right recognized by law, whether by statute or by common law." *Rosenfelt*, 262 So. 3d at 516 (¶12).

> Put another way, standing is determined by "[w]hether the particular plaintiff had a right to judicial enforcement of a legal duty of the defendant or whether a party plaintiff in an action for legal relief can show in himself a present, existent actionable title or interest, and demonstrate that this right was complete at the time of the institution of the action.

*Id.*

¶24. Here, the employees at Morgan & Morgan's Jackson office undisputedly performed the work on Arneetria's case. As established by John Morgan's affidavit, "all employees in Jackson are employees of Morgan & Morgan PLLC." Thus it is Morgan & Morgan PLLC that has the legal right and colorable interest in the attorney fees obtained on the case even if Arneetria had no direct contract with Morgan & Morgan PLLC. It was obviously representing itself as Arneetria's attorney to the courts and the public. At no point did Arneetria question the legality of Morgan & Morgan PLLC's representation while accepting

12

and benefitting from the work of the law firm's employees. Therefore, Morgan and Morgan PLLC had standing and was the proper entity to seek to intervene and seek fees.

## II.     Apportionment of Attorney Fees

¶25.    Courts have dealt with the issue of attorney fees in various contexts. Sometimes courts must determine whether a party is entitled to an attorney fee at all. *See Tunica County v. Town of Tunica*, 227 So. 3d 1007 (Miss. 2017) (town and school district not entitled to attorney fees in dispute about casino fees); *McKee v. McKee*, 418 So. 2d 764 (Miss. 1982) (the matter of determining attorney fees in divorce cases is largely entrusted to the sound discretion of the trial court). In other cases, the entitlement to fees is clear, such as in disputes over contracts that contain attorney fee provisions. *Biel Reo LLC*, 242 So. 3d at 845-46 (¶50). In these cases, the court need only determine what would be a reasonable amount of attorney fees to award.

¶26.    Courts often determine an attorney fee award in minors' cases or estate settlements as well. In such cases, Rule 6.12 of the Uniform Chancery Court Rules concerning petitions for allowance of attorney fees directs, among other things, that "[i]f the parties make an agreement for a contingent fee, the contract or agreement of the fiduciary with the attorney must be approved by the Chancellor. . . . " We have found that an attorney who has not had a contract approved may only be awarded fees on a quantum meruit basis if the attorney has a reasonable expectation of recovery on that basis. *Foster v. Kotsakos*, 147 So. 3d 896, 898 (¶¶8-9) (Miss. Ct. App. 2014); *In re Wilhite*, 121 So. 3d 301, 305 (¶¶9-11) (Miss. Ct. App.

13

2013).

¶27.    In less frequent situations, such as the one before the Court today, we have had to apportion fees between attorneys. *Foster*, 147 So. 3d at 899-900 (¶¶13-14); *In re Wilhite*, 121 So. 3d at 304-06 (¶¶7, 9-11); *In re Estate of Baker*, 31 So. 3d 1285, 1288-89 (¶¶13-14) (Miss. Ct. App. 2010). Here Morgan & Morgan had a written and enforceable contract with Arneetria. As one of the wrongful death beneficiaries, she hired a lawyer and filed a wrongful death case against Grove Transportation. As the beneficiary who filed suit, she did so as the representative of all the statutory beneficiaries. *Long v. McKinney*, 897 So. 2d 160, 176 (¶68) (Miss. 2004). Arneetria obligated the beneficiaries to the claim, but she did not create a contract between the beneficiaries and Morgan & Morgan. It appears from the record that the rest of the beneficiaries acted collectively with Arneetria and implicitly accepted the services of Morgan & Morgan. In cases where there is no written contract, attorneys may be compensated if the elements of quantum meruit are proven. *Eubanks v. Huber (In re Estate of Eubanks)*, 251 So. 3d 734, 740 (¶15) (Miss. 2018). The attorney must show:

> (1) valuable services were rendered or materials furnished;
>
> (2) for the person sought to be charged;
>
> (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; and
>
> (4) under such circumstances has reasonably notified person sought to be charged that plaintiff, in performing such services, was expected to be paid by person sought to be charged.

14

*In re Wilhite*, 121 So. 3d at 305 (¶9); *see also Tupelo Redevelopment Agency v. Gray Corp.*, 972 So. 2d 495, 514-15 (¶56) (Miss. 2007).

¶28.   It is acknowledged in the record that both firms were retained and provided valuable legal services to Arneetria and the Bourne family.  The Bourne family clearly accepted these services and were on notice that each firm expected payment for its efforts.  What remained for the circuit court to establish in this case was the division of the fees between the two law firms. We believe that the circuit court's apportionment of the fees displayed an abuse of discretion because the percentage of the fee allocated to Bailey was unreasonable.

¶29.   The reasonableness of the fee is determined by reference to Rule 1.5(a) of the Mississippi Rules of Professional Conduct that states:

> A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
>
> > (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> >
> > (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> >
> > (3) the fee customarily charged in the locality for similar legal services;
> >
> > (4) the amount involved and the results obtained;
> >
> > (5) the time limitations imposed by the client or by the circumstances;
> >
> > (6) the nature and length of the professional relationship with

15

the client;

>    (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

>    (8) whether the fee is fixed or contingent.

*Biel Reo LLC v. Lee Freyer Kennedy Crestview LLC*, 242 So. 3d 833, 846 (¶51) (Miss. 2018), *reh'g denied* (May 31, 2018).

¶30.    Although slightly different, similar factors apply that were articulated in *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982), and have become known as the *McKee* factors:

>    The fee depends on consideration of, in addition to the relative financial ability of the parties, the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of the questions at issue, as well as the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case.

¶31.    In *Baker*, we applied both the Rule 1.5 and *McKee* factors to apportion the fees between counsel. *Baker*, 31 So. 3d at 1289 (¶13). In that case, a Louisiana attorney Jack Harang had accepted a railroad accident case which occurred in Mississippi in March 2002. *Id.* at 1286 (¶1). He associated Mississippi attorney Pat Barrett to work on the case with the agreement that the work, expenses and fees would be divided equally. *Id.* For the next five years, Barrett worked 726 hours on the case and spent $32,528.94 of his own money to finance it. *Id.* at 1288 (¶8). Barrett had reached out to Harang several times for assistance but received no response. *Id.* At settlement, Barrett requested the chancery court to issue an order for attorney fees. Harang did not dispute Barrett's time or expenses. Instead, Harang

16

sought to enforce his association agreement with Barrett that would have netted Harang 50% of the fee. Citing Rule 1.5(e) of the Mississippi Rules of Professional Conduct and the *McKee* factors, we affirmed the chancery court's award of 90% of the fee to Barrett as being fair and reasonable under the facts.

¶32. Application of the *McKee* factors requires that a court articulate factual determinations on each of these factors when awarding attorney fees and base its finding on credible evidence. *Biel Reo LLC*, 242 So. 3d at 845 (¶49); *Stokes v. Campbell*, 794 So. 2d 1045, 1048 (¶11) (Miss. Ct. App. 2001). Thus, in *Mississippi Valley Silica Company Inc. v. Barnett*, 227 So. 3d 1102 (Miss. Ct. App. 2016), we rejected a trial court's order that contained no findings on the reasonableness of a fee. We said its order was insufficient even if the record contained counsel's time records. *Id*. at 1130 (¶79). There we said:

> Our Supreme Court has expressly mandated that a trial court's determination of reasonable attorneys' fees must "consider the eight factors enumerated in Rule 1.5 of the Rules of Professional Conduct." *BellSouth Pers. Commc'ns LLC v. Bd. of Supervisors of Hinds Cty.*, 912 So. 2d 436, 448 (¶39) (Miss. 2005). At least when a party requests a fee award as substantial as in this case, "trial court judges must follow the appropriate procedure and make the requisite findings of fact necessary to insure a losing litigant is only made to compensate his adversary for fees and expenses which were reasonably incurred." *Id*. The trial court in this case failed to make any such findings. Accordingly, the award of attorneys' fees must be vacated and remanded to the trial court, and on remand the trial court should determine and award reasonable attorneys' fees based on findings of fact and conclusions of law related to the *McKee* factors.

*Miss. Valley*, 227 So. 3d at 1130 (¶80).

¶33. This was reiterated in *Eubanks* where the Mississippi Supreme Court remanded a case

17

for the second time because the trial-level court failed to make detailed findings concerning the quantum meruit elements and the factors substantiating the reasonableness of an attorney fee. *Eubanks*, 251 So. 3d at 742 (¶20).

¶34. The only exception to the requirement that the court specifically evaluate each reasonableness factor has been in a case where the fee was negligible. *Foster*, 147 So. 3d at 899-900 (¶¶13-14). In that case Foster, an attorney, was hired in February 2012 to pursue a minor's claim regarding a car accident. *Id*. at 897 (¶1). Between February and July 2012, he had only secured the police report and received a few letters from a medical collection agency. *Id*. (¶3). The client terminated Foster and hired attorney Kotsakos. *Id*. (¶2). The limits of the liability insurer were $25,000 and the minor had $24,416 in medical bills. *Id*. (¶4). Shortly after getting the file, Kotsakos negotiated with the insurer for the policy limits and negotiated the medical expenses, leaving only $10,067.36 to be disbursed. *Id*. Kotsakos presented the settlement to the chancery court and Foster sought a portion of the fee. *Id*. at 897-898 (¶¶4-5). The judge reduced the overall attorney fee and awarded one-third to Kotsakos and $500 to Foster. On appeal, Foster raised the lack of a *McKee*[11] factor analysis by the judge. We noted that the amount of recovery was small and that it was Kotsakos who clearly did the work to secure the settlement.[12] But other small fee cases may still require a

---

[11] *McKee v. McKee*, 418 So. 2d 764 (Miss. 1982).

[12] A court which has overseen protracted litigation and is familiar with the work done during that litigation by a party's attorneys may also rely on its own experience and observation under Mississippi Code Annotated section 9-1-41 (Rev. 2014). *Upchurch Plumbing Inc. v. Greenwood Util. Com'n*, 964 So. 2d 1100, 1115-16 (¶¶36-40) (Miss. 2007)

18

written *McKee* analysis as noted in the more recent case of *Webster v. Mississippi Department of Wildlife, Fisheries and Parks*, 257 So. 3d 277 (Miss. 2018). There the Supreme Court remanded a case of negligible fees, $2,800, for the court to consider the eight factors listed in Rule 1.5 and show how it calculated the fee. *Id.* at 284-85 (¶¶31-33). Here, the fee is substantial, and we do require the court to follow the same procedure and analyze the case for the contribution of each counsel according to the *McKee* factors and Rule 1.5(e).

¶35. As on any fact-intensive issue, attorney fees are reviewed on a case by case basis. We find that the circuit court failed to undertake the analysis required under Mississippi law and made only minimal and erroneous findings to support the award of fees in this case. The only precedent the circuit court cited was *Thornton v. Clarke County*, No. 4:08cv139, 2012 WL 6569378 (S.D. Miss. Dec. 16, 2012). The fee dispute in *Thornton* was between an Alabama law firm and a former associate who both worked the case. Plaintiffs originally contracted with the Alabama firm to file suit in Mississippi. The associate who was admitted to practice in Mississippi was assigned to work on the case while with the firm. The associate left the law firm, started his own practice in Mississippi, and was retained by the plaintiffs after they fired the Alabama firm. After the case settled, a dispute over fees arose,

(court awarded attorney fees without specifying details of its analysis based on itemized attorney time records in a complex contractual dispute between two businesses that had been ongoing for more than a decade). But its finding must not violate the *McKee* or Rule 1.5(a) factors or the requirement for credible evidence in the record to support its use of discretion. Here, because the case was taken on contingency, we would not expect detailed time records. *Gillies v. Gillies (In re Estate of Gillies)*, 830 So. 2d 640, 645 (¶20) (Miss. 2002), which proves even more reasoning for the need of a detailed evaluation of the *McKee* factors.

19

and one issue the Mississippi federal district court faced was what law to apply. The court determined that Alabama law applied and decided accordingly. *Id.* at \*8. The case at hand, however, involves Mississippi attorneys and retainer contracts signed in Mississippi. Mississippi has its own a rich body of law on the issue of determining the apportionment and reasonableness of an attorney fee that the court in this case should have applied.

¶36.    In addition to failing to apply the correct law, the circuit court made manifestly erroneous factual findings. The court said that Morgan & Morgan had acquired and developed the case for over two years only to have Bailey work merely two months before settlement. But the record shows that although Morgan acquired the case in April 2011, the only "development" and "work done" for three years (between April 2011 and April 2014) was obtaining medical records, helping the client get litigation loans that nearly thwarted any settlement at all, and identifying the parties.[13] From April 2013 to April 2014, there is no documentation of any attorney's contribution to the case at all. In the next 18 months that Morgan & Morgan had the case, all it did was file the action, propound and answer discovery, and affirmatively take one deposition. According to the attorney who did this work, he undisputedly spent only 22.5 hours on the case. Even then, paralegals provided the bulk of the case work. Morgan & Morgan did not work on the case for just two years as the court said; the firm had responsibility to manage the case for nearly five years, but the firm

---

[13] The Comments record does show Attorney Gatlin calling and emailing potential experts. But there is no further entry on the need for experts, and no expert designation was ever made.

never set the case for trial or even for mediation when offered by the defendant.

¶37. On the other hand, the circuit court said again in error that "Bailey work[ed] the case for roughly two months before settlement." The record shows that Attorney Bailey was hired in March 2016, and immediately tried to set the case for trial. At this point, she had undertaken the risk of ultimately trying the case or somehow gaining recovery. Where Morgan & Morgan had many attorneys, Attorney Bailey was a solo practitioner, and her work on the case precluded her from taking and working other cases. The record also shows that Bailey was able to set the case for mediation and wisely associated someone familiar with it to make the mediation presentation. She was able to settle the case in July 2016. But the successful mediation was not the end of Bailey's work. In fact, no payment could be made until the estate work, that Morgan & Morgan had failed to file, was completed. Bailey had to do this.[14] Most significantly, Bailey had to negotiate the litigation loan down from $71,000 for there to be any settlement at all.[15] The negotiations of the liens in this case and the estate work done by Bailey represent a significant contribution to the case's overall successful resolution, which the circuit court failed to acknowledge. It is clear from the

---

[14] Bailey was literally assuming the filing duties and completion of a completely separate case— the estate case—for which, in contingency cases, counsel does not usually receive any compensation other than what she obtains through recovery of fees in the wrongful death case.

[15] According to Morgan & Morgan's Comments record, in 2013 the loan payoff was $17,353.00. By 2014, Arneetria had another loan and Morgan & Morgan was aware that the payoff had risen to $45,745. By the time the case was settled in 2016, the balance on the loan had ballooned to $71,000.

record that the circuit court was in error in determining that Morgan & Morgan contributed 95% of the effort to bring the case to a successful conclusion.

¶38.    We agree with the circuit court that the value of the hours an attorney spends is not the same; however, we do not see where the court applied that principle. We anticipate that when the circuit court performs the *McKee* and Rule 1.5(e) analysis on remand, its application will be clear.

¶39.    On the issue of the apportionment of attorney fees between Morgan & Morgan and Bailey Law, we hold that the circuit court abused its discretion and we reverse and remand for the circuit court to undertake the appropriate *McKee* factors and Rule 1.5(e) analysis and reapportion the fees awarded to the parties.

### III.    Ethical Bar

¶40.    Bailey argues that Morgan & Morgan's claim to a percentage share of the recovered contingency fee is unethical and unenforceable. Bailey claims Rule 1.5(e) of the Mississippi Rules of Professional Conduct bars any claim. Rule 1.5(e) provides:

> A division of a fee between lawyers who are not in the same firm may be made only if: (1) the division is in proportion to the services performed by each lawyer or, by written agreement each lawyer assumes joint responsibility for the representation; (2) the client is advised of and does not object to the participation of all the lawyers involved; and (3) the total fee is reasonable.

¶41.    Bailey claims that the clients have not agreed to splitting or sharing fees with Morgan & Morgan. But the record is void of any affidavits or testimony of Arneetria or any other family member considered to be an heir of Ruth Bourne about this matter. Therefore, we

22

find this issue to be without merit.

## CONCLUSION

¶42.    We find that Morgan & Morgan PLLC did have standing to seek attorney fees in this case.  We further find that the circuit court was manifestly wrong and applied the wrong legal standard in its apportionment of fees.  Therefore, we reverse and remand for the circuit court to reapportion the fees awarded to the law firms after applying the factors outlined in *McKee v. McKee*, 418 So. 2d 764 (Miss. 1982), and Rule 1.5(e) of the Mississippi Rules of Professional Conduct.

¶43.    **REVERSED AND REMANDED.**

**CARLTON AND J. WILSON, P.JJ., GREENLEE, TINDELL, LAWRENCE AND C. WILSON, JJ., CONCUR. BARNES, C.J., McDONALD AND McCARTY, JJ., NOT PARTICIPATING.**